# South Kentucky Building & Loan Ass'n et al. v. Robinson et al.

(Decided June 24, 1938.)

426

WHITE & CLARK and HUNTER WOOD for appellants.

HOMER A. GARVEY and B. F. GRAZIANI for appellees.

Opinion of the Court by Judge Perry—Affirming.

This equitable action was originally begun on September 14, 1933, in the Christian circuit court by the South Kentucky Building & Loan Association against Jodie Robinson and his wife, Willie Lee Robinson, seeking a foreclosure of its mortgage lien against a certain house and lot in Hopkinsville, Ky., of the defendants, which they had in September, 1927, mortgaged to the plaintiff to secure the payment of a loan it had then made them in the sum of $800.

Default having been made by the defendants in the installment payments of the loan, precipitating its maturity, as so provided for by the terms of the note, executed therefor, this suit to enforce its mortgage lien was instituted to collect the unpaid balance owing, together with accrued interest, amounting to the sum of $553.40.

At the time this suit was instituted, the defendant mortgagors had become nonresidents of the state, it is averred in the verified petition setting out that:

> "The defendants, Jodie Robinson and Willie Lee Robinson, his wife, are non-residents of the State of Kentucky, and have been for more than four months next before the filing of this action, and that they are residents of Rochester, in the County of Monroe, and State of New York, and that No. 4 Marietta Street, Rochester, New York, is the name of the place wherein a post office is kept nearest to the place where defendants reside."

Both of the defendants being thus shown to be nonresidents, they were proceeded against by warning order. No separate affidavit was attached to the petition, setting out the fact, but such fact of their non-

residence was alleged and set out in the petition, which was duly verified by an officer of the company. When this petition was filed, a warning order was issued by the clerk and a warning order attorney duly appointed.

At the following February, 1934, term of the court or more than sixty days after the warning order was made, report was filed by the warning order attorney and bond executed for the nonresident defendants, as required by section 410, Civil Code of Practice, and a judgment was duly entered, adjudging that there was owing by the nonresident defendants to the plaintiff corporation the amount sued for of $553.40, with interest from December 1, 1933, and directing the enforcement of the plaintiff's mortgage lien against the nonresidents' house and lot, as described in the mortgage, by its sale to be made by the master commissioner for the satisfaction of such amount adjudged owing and the costs of the action.

Thereupon the cause was referred to the master commissioner, who had the property appraised, by which its value was fixed at $850, and a judicial sale of it followed, in which the plaintiff became the purchaser at the sum of $575. Thereafter, the commissioner having made report of the sale, which was duly confirmed, a deed, duly acknowledged, was made by the commissioner and approved by the court, which was delivered to the plaintiff conveying the property to it.

The plaintiff then paid the court costs, amounting to some $87.66, and took possession of the property in April, 1934, which it then listed for sale with a real estate agency of the city, by which it was on June 5, 1934, resold to Ernest Norfleet and Carrie Norfleet, his wife, for a cash purchase price paid of $900, and conveyed by the company's special warranty deed to them.

It appears that these purchasers, finding the property, purchased as a home, was in a badly run down condition, they, in order to make it habitable, did at once expend a very substantial amount or some $1,400 (less the amount included therein of certain taxes owing and due upon the property, which they paid) upon repairs to the house. Upon the completion of such repairs, the Norfleets moved into the property and have since occupied it as their home.

Along about the same time that this property was sold by the appellant building and loan association to

the Norfleets and improved by them, the Robinsons, its former nonresident owners and mortgagors of it to the association, re-appeared on the scene and shortly thereafter, on August 31, filed their petition in the Christian circuit court, claiming title to and seeking to recover possession of this property, which had been purchased, improved and then occupied by the Norfleets. Both the building and loan association and the Norfleets were made parties defendant.

In their petition the Robinsons, as plaintiffs in this second suit, alleged that the former judgment rendered against them in the suit brought by the building and loan association against them, was null and void, for which reason they moved the court to vacate and modify the judgment upon various grounds assigned, one of which was that the warning order made in the former foreclosure action against them was fatally defective; that the clerk of the court was therefore without authority to issue the warning order made thereon against them or to appoint the warning order attorney, and for such reason, they alleged that the trial court never acquired jurisdiction, in that there was no proper constructive service or warning notice given them, as by the law required, in the suit, and the judgment rendered in the action was therefore void and should be set aside and held for nought.

In their petition the plaintiffs referred to the records, pleadings and proceedings in said former action brought by the building and loan association against them and made the whole of that record a part of their proceeding, which they asked to be heard and considered upon the trial of their cause.

The court treated this Robinson petition as a motion to set aside the original judgment and consolidated their suit with the original action brought by the building and loan association to foreclose its mortgage lien against them.

By appropriate pleadings the building and loan association set out in an amended petition all the facts hereinabove enumerated and further alleged that the plaintiffs, Jodie Robinson and Willie Lee Robinson, were indebted to it, including accrued interest, in the amount of $794.74, by virtue of the original note and mortgage executed by them. Further, both it and the Norfleets then alleged in a separate paragraph that the

building and loan association and Ernest Norfleet and wife, Carrie Norfleet, had been occupying claimants of said property in good faith ever since April, 1934, and that while they were such occupying claimants, they had improved the property in good faith by expending large sums in making permanent and lasting improvements thereto, which had greatly enhanced the salable value of the property to the extent of $2,000 and they asked that the property immediately be sold for the purpose of satisfying, first, the original mortgage lien of the building and loan association and, second, the lien for the enhanced value of the property brought about as the result of the permanent improvements made thereto by the Norfleets while occupying claimants of the property as purchasers in good faith of it.

The issues being thus joined, the cause proceeded to trial before the chancellor, who adjudged, first, that it appearing that the affidavit for the warning order in the original action of the building and loan association against Jodie Robinson and wife, Willie Lee Robinson, failed to allege that the nonresident defendants, Jodie Robinson and Willie Lee Robinson, were absent from the State of Kentucky at the time said petition was filed, it was thereby rendered fatally defective, with the result that the clerk of the court was without power or authority to issue the warning order asked to be made against said nonresident defendants, and for such reason adjudged that the said warning order was null and void and that the court had acquired no jurisdiction thereunder to enter the judgment rendered in said cause, and that the sale made by the master commissioner, pursuant to and ordered by said judgment, was void and that the building and loan association, the purchaser of the property at the decretal sale, thereby acquired no right or title in and to the premises of the said Robinsons, and upon such grounds adjudged that the said judgment, order of sale, sale and deed from the master commissioner of the court to the building and loan association be all set aside and held for nought and further adjudged that the said Jodie Robinson and wife, Willie Lee Robinson, had never been divested of their title to said premises by virtue of such void proceedings, and that they had remained and were now the owners of same.

Further, it adjudged that the said building and loan association having become the purchaser of said prop-

erty in good faith, while relying on said judgment, sale and deed from the master commissioner and the court's confirmation thereof, and it having further, on June 5, conveyed said property by its special warranty deed to Ernest Norfleet and wife, who had thereupon, and while relying in good faith upon the title of their vendor, the said building and loan association, entered upon and taken possession of the property and from such time have occupied it in good faith, while claiming to hold, under their vendor, legal title thereto and have expended large sums on the property in permanent and lasting improvements, that the said building and loan association and the said Norfleet and wife had been since June 5, 1934, occupying claimants of said real estate in good faith. Further, he found and adjudged that Jodie Robinson and wife were indebted to the building and loan association by virtue of the promissory note they executed and delivered it, which was sued on in the original petition and again set up in its counterclaim and cross-petition; that the said building and loan association recover of the said Robinson and wife the sum of $794.74, as of date November 1. 1936, subject to a credit in the sum of $350 as the reasonable rent and owing by the said Norfleets, who had the use and occupancy of the said property since June, 1934; that therefore the said building and loan association would recover of the said Robinsons on its said debt and interest the sum of $444.74, and its costs in the action expended.

Further, it was adjudged that the building and loan association, by virtue of its mortgage, took and held a first and prior lien upon the premises described to secure the payment of said sum adjudged it of $444.74, together with the cost of the action, and that the said lien be enforced and the said property sold to pay the same.

Further, it was adjudged that Ernest Norfleet and wife had, while occupying claimants of said premises, in good faith expended large sums in making lasting improvements upon said property, which had greatly enhanced its salable value and for such reason adjudged them a lien upon the premises so improved as against the said building and loan association, and also as against said Jodie Robinson and his former wife, Willie Lee Robinson, to the extent that said improvements had enhanced the salable value of the real estate.

Further it was adjudged that the value of the use and occupancy of said premises up to the time of their sale having been adjudged owing by the Norfleets to the Robinsons, and the $350.00 so awarded having been set off and charged against the debt of the building and loan association, no further use and occupancy should be charged as against the lien of the said Ernest Norfleet and Carrie Norfleet, his wife.

However, inasmuch as the chancellor in this first decree stated that he was unable to then fix the exact amount of the enhanced salable value of the real estate due to the permanent improvements placed thereon, as stated, by the Norfleets, he reserved his finding as to the amount of their lien until after the judicial sale of the property, but adjudged that said lien should attach to and become a charge against the proceeds of said sale, in the hands of the master commissioner, until a final determination of the exact amount of the lien of the said Norfleets was made.

The chancellor thereupon ordered the property to be advertised and sold by the master commissioner, which order was later duly executed by a judicial sale made of it, when the appellant building and loan association again became the purchaser thereof at a price of $1,500 it bid therefor.

Said sale having been duly reported and confirmed and the cause again coming on for trial upon the deferred matter of fixing the amount of the enhancement in the sale value of the property effected by the improvements placed upon the property by Ernest Norfleet and the value of the property at the time it was sold under the void judgment, the chancellor adjudged that the property at the time it was sold under the void judgment to the Norfleets was of the reasonable value of $900 and, further, that Ernest Norfleet and wife had enhanced its value by improvements placed thereon in the sum of $600, and further adjudged that Willie Lee Robinson and Jodie Robinson should recover of the building and loan association, as purchaser at the decretal sale of the property, the sum of $455.26, and further adjudged that the cost of the sale under the void judgment, and also the cost of the sale under the judgment to determine the amount which the Norfleets had enhanced the property, should be taxed against the building and loan association.

From this judgment both the building and loan association and its co-defendants, the Norfleets, criticising same as improper, have appealed. No cross-appeal has been prosecuted therefrom by the appellees.

We have very carefully considered the chancellor's determination thus made of these questions, which was herein presented by what, in briefs, is termed the chancellor's "bifurcated" decision thereof, and we have reached the conclusion that criticisms made of the chancellor's findings and decrees on these respective issues are not to be sustained, in that it is our conclusion that his decree made represents a proper decision of them.

The chancellor first adjudged that all the proceedings and orders in the first foreclosure action, instituted by the building and loan association, were to be set aside and held for nought because of the fact that the allegations of the verified petition, seeking the issuance of a warning order by the clerk against the nonresident defendants was fatally defective, in that the affiant therein failed to aver, as required, that the nonresident defendants were then absent or believed by him to be absent from the state. This ruling is in harmony with our repeated construction given section 58, subsection 1, Civil Code of Practice, prescribing the mandatory requirements of an affidavit made for procuring a warning order against nonresidents, wherein we have held that an omission by the affiant to make an averment of the nonresidents' then absence from the state rendered the affidavit fatally defective and would not authorize the clerk to issue a warning order thereon. Leonard v. Williams, 205 Ky. 218, 265 S. W. 618; Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, L. R. A. 1917C, 171.

The problem presented to the chancellor by the record of tangled transactions and proceedings, was to restore all the litigants to their former positions and rights, as far as the same could be justly worked out between them.

To this end, it appearing that the property in question had at its judicial sale been purchased at the price of $1,500, the question arose as to how the same might be properly allocated to and divided between them, the several litigants, according to and ratably

with their respective equities in the disputed property's sale proceeds.

To this end, the chancellor adjudged, as stated, that the building and loan association should recover against its nonresident mortgagors the amount of its debt owing it by them of $794.74. Further, he adjudged that the Norfleets, having in good faith become the purchasers of the property from the said building and loan association, who had acquired it at the decretal sale held under the judgment of the court in a proceeding wherein it had jurisdiction of the subject matter, had the right to rely in good faith upon the validity of the title they received from the building and loan association as its vendees and that, upon taking possession and occupancy of the property so conveyed them by its special warranty deed, they became in good faith occupying claimants, who were entitled to a lien upon the property, both as against the absolute owner and as against their vendor for the enhanced vendible value of the property caused by the permanent improvements placed by them thereon in good faith as occupying claimants, and therefore adjudged that they were entitled to be paid out of the sale proceeds of the property the amount of $600, found by the chancellor to represent the enhanced vendible value of their permanent improvements so placed by them upon the property; that the sum of these two said allowances made of $1,394.74 being deducted from the sale price of the property of $1,500 would leave remaining $105.26, which he adjudged should go to the appellee Robinsons, as the owners of the property, or all its sale proceeds after satisfying and paying these lien debts against it. But further he found that inasmuch as the said Robinsons had never been divested of their title to the property, they were entitled to receive from the Norfleets rent in the sum of $350, fixed and found by the chancellor as the reasonable rent owing by them for their use and occupancy of the Robinsons' property during the stated period it was theirs.

The chancellor directed that this rent amount should be deducted from the $600 adjudged payable to the Norfleets for the improvements made by them upon the property or as the enhanced value of the property caused by the improvements placed upon it in good faith by them as occupying claimants.

Further, the chancellor held that the costs in the sum of some $87, incurred by the appellant in its foreclosure action, in which the judgment was set aside and in this later branch of the action, brought against it, wherein the Robinsons recovered the title to the property, should be paid by the building and loan association.

We concur also in the propriety of this ruling of the chancellor.

While the division of the $1,500 sale proceeds of the property between the defendants litigants as hereinabove stated may have been worked out by a somewhat different method from that employed by us, it yet reaches the same results as were adjudged by the learned chancellor, in that it awards of the sale proceeds the sum of $794.74 to the building and loan association, in payment of the mortgage debt, the sum of $455.26 to the appellee Robinsons, and $250 to the Norfleets, the amount remaining of the $600 awarded them for their improvements after deduction therefrom of the $350 rent owing by them to the Robinsons, and which three amounts in their aggregate total the sum of $1,500, the amount of the sale proceeds of the property, which was to be divided between the parties according as their interests appeared.

It is therefore our conclusion that the judgment of the learned chancellor, being in its findings and awards in accord with our own views, should be, and it is, affirmed.

As to the other questions raised as to the relative rights and liabilities existing as between the litigants, it may be said that such other questions arising from these several transactions had between these parties are not here before us for decision, in that no cross-appeal has been asked by the appellees against either of the appellants.

As to what may be the relative rights and liability, as between the appellants, as vendor and vendee, and holder of a void title to the property involved under the building and loan company's special warranty deed, the determination of such questions must be first made when presented by appropriate proceedings had before the chancellor therefor, but as to which we in no wise here express any opinion upon.